UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| LOKMAR Y. ABDUL-WADOOD, | ) |
| Plaintiff, | ) |
| vs. | ) Case No. 1:11-cv-00091-JMS-DML |
| EDWIN BUSS, JIM WYNN, BRIAN PEARSEN, MARK LEVENHAGEN, JERRY BRENNAN, DOUG BARNES, MS. S. NOWATZKE, T. BEAN, | ) |
| Defendants. | ) |

**Entry Granting Motion for Summary Judgment**

Plaintiff Lokmar Y. Abdul-Wadood (a.k.a. Lincoln Love) filed this civil action pursuant to 42 U.S.C. ' 1983 challenging his indefinite placement on administrative segregation and alleging that certain grievances have been returned to him unprocessed. He requests damages and declaratory and injunctive relief from the defendants who are all current or former employees of the Indiana Department of Correction ("IDOC"). The defendants deny any wrongdoing and seek resolution of this action through the entry of summary judgment.

For the reasons explained below, the defendants' motion for summary judgment [Dkt. 31] is **granted.**

**Standard of Review**

A party is entitled to summary judgment when, viewing the pleadings and record evidence in the light most favorable to the nonmoving party, "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(a). The substantive law identifies which facts are material. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* If no reasonable jury could find for the non-moving party, then there is no "genuine" dispute. *Scott v. Harris*, 550 U.S. 372 (2007).

## Undisputed Facts

The undisputed material facts are as follows:

1. Abdul-Wadood is serving a life sentence for murder along with concurrent sentences for robbery, battery, and kidnapping.

2. Abdul-Wadood is currently housed in the Department-Wide Administrative Segregation Unit ("DWAS") at the Wabash Valley Correctional Facility ("Wabash Valley").

3. Abdul-Wadood has committed over 60 violations of IDOC policy while in IDOC custody, including eighteen major offenses. He last committed a major offense when he was convicted of battery in 2006 and sentenced to a year in disciplinary segregation.

4. In 2007, following his time in disciplinary segregation, Abdul-Wadood was reclassified to DWAS at the Westville Control Unit ("Westville"). Abdul-Wadood was notified by prison mail that he had been placed on DWAS. He was not given a hearing at that time.

5. Abdul-Wadood was transferred from DWAS at Westville to DWAS at Wabash Valley in December of 2010.

6. Abdul-Wadood has not been given a possible release date from DWAS.

7. Abdul-Wadood has had dozens of reviews of his status in DWAS, including several classification hearings, and the defendants have concluded that it is in the best interest of IDOC and the individual facilities that Abdul-Wadood remains in DWAS.

8. The defendants were following IDOC policy by keeping him in DWAS, subject to monthly review, without a guaranteed release date.

9. IDOC Policy 02-01-111 provides specific criteria for placing offenders in administrative segregation and gives the defendants significant discretion in applying such policy. It states that no offender should be removed from DWAS without the approval of the Regional Director or the Deputy Commissioner/Operations. (Exhibit 7, p. 13).

10. Defendant Bean refused to process Abdul-Wadood's grievances related to his placement on administrative segregation. The defendants are not claiming that Abdul-Wadood failed to exhaust his administrative remedies.

## Discussion

There are two claims raised in Abdul-Wadood's complaint. The first is that his indefinite placement in DWAS violates his constitutional rights. The second is that defendant Bean's actions in failing to process grievances related to his placement on administrative segregation violated his First Amendment rights. Each claim is discussed below.

### A. Indefinite Placement in Administrative Segregation

Abdul-Wadood asserts that the Supreme Court has held that assigning prisoners to administrative segregation indefinitely violates due process. Abdul-Wadood concludes that because there is no dispute that his placement on administrative segregation is indefinite a jury could return a verdict in his favor.[1] The defendants argue that Abdul-Wadood misunderstands the law and that he was given all the due process to which he was entitled.

---

[1] Abdul-Wadood argues in response to the motion for summary judgment that it is disputed whether 1) he was placed on Administrative Segregation in violation of Supreme Court rulings and his constitutional right to due process; and 2) whether the defendants are entitled to qualified immunity. See dkt. 42. These are not "facts" in dispute. Abdul-Wadood's disputes are of law and not of fact.

*1.     Liberty Interest*

The due process clause of the Fourteenth Amendment, on which Abdul-Wadood relies, applies only to deprivations of life, liberty, and property. Otherwise states are free to act summarily. *Marion v. Radtke*, 641 F.3d 874, 875 (7th Cir. 2011) (hereinafter *Marion II*). Therefore, the first question is whether indefinite placement on DWAS deprived Abdul-Wadood of liberty. The seminal cases to guide this inquiry are *Sandin v. Conner*, 515 U.S. 472 (1995) and *Wilkinson v. Austin*, 545 U.S. 209 (2005). In these cases, the Supreme Court has considered how the due process clause applies to prisoners' living conditions. In *Sandin,* the Court held that a prisoner's sentence of thirty days of segregated confinement "did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest." *Id.* It further concluded that the prisoner's confinement "did not exceed similar, but totally discretionary, confinement in either duration or degree of restriction," nor did it affect the length of his sentence. *Id.* at 486-87. After *Sandin*, states may grant prisoners liberty interests in being in the general population only if the conditions of confinement in segregation are significantly more restrictive than those in the general population. *Whitford v. Boglino*, 63 F.3d 527, 533–534 (7th Cir.1995).

In *Wilkinson,* prisoners were transferred to a maximum-security prison and placed in segregated confinement for an indefinite duration. *Wilkinson*, 545 U.S. at 214, 216-17. The prisoners were denied virtually all sensory and environmental stimuli, permitted little human contact, and disqualified from parole eligibility. *Id.* at 214-15. The Court concluded that although "any of these conditions standing alone might not be sufficient to create a liberty interest, taken together they impose an atypical and significant hardship within the correctional context." *Id.* at 224. "The Supreme Court's decisions in *Sandin* and *Wilkinson* establish that disciplinary segregation can trigger due process protections depending on the duration and conditions of

segregation." *Marion v. Columbia Correction Inst.*, 559 F.3d 693, 697 (7th Cir. 2009) (hereinafter "*Marion I*") (citing *Wilkinson*, 545 U.S. at 224; *Sandin*, 515 U.S. at 486).

Abdul-Wadood cites to *Hewitt v. Helms*, 459 U.S. 460 n.9 (1983) in support of his claims. But that case does not materially advance his position. In *Helms,* the Supreme Court considered "what limits the Due Process Clause of the Fourteenth Amendment places on the authority of prison administrators to remove inmates from the general prison population and confine them to a less desirable regimen for administrative reasons." *Helms,* 459 U.S. at 462. The Court held that that "[a]s long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight." *Id.* at 468 (*citing Montanye v. Haymes*, 427 U.S. 236, 242 (1976); *Vitek v. Jones*, 445 U.S. 480, 493 (1980)). "It is plain that the transfer of an inmate to less amenable and more restrictive quarters for nonpunitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence." *Helms*, 459 U.S. at 468. The plaintiff's right to due process in *Helms* did not arise out of the due process clause itself but out of the mandatory language of Pennsylvania's statutes and regulations. Such statutes and regulations are not relevant in this case.[2]

The Seventh Circuit has explained that "both the duration and the conditions of the segregation must be considered in the due process analysis; if the conditions of segregation were

---

2 In any event, in *Sandin*, the Court moved away from its approach in previous cases, such as *Helms*, wherein it had found liberty interests to be present where prison regulations contained "mandatory language" and "specific substantive predicates." The Court shifted its focus from the language of the prison regulations to the nature of the deprivation. Thus, before *Sandin*, when prison regulations created a liberty interest in remaining free from disciplinary segregation, an inmate was entitled to the procedural protections set forth in *Wolff v. McDonnell*, 418 U.S. 539, (1974), prior to his placement in such confinement. *See Rasheed–Bey v. Duckworth*, 969 F.2d 357, 361 (7th Cir.1992). *Sandin* "sounded the death knell" for claims alleging that the imposition of disciplinary segregation necessarily entitles an inmate to the protections outlined in *Wolff* where mandatory language is present in administrative regulations. *Uzzell v. Scully*, 893 F. Supp. 259 (S.D.N.Y.1995).

significantly harsher than those in the normal prison environment, 'then a year of [segregation] might count as a deprivation of liberty where a few days or even weeks might not.'" *Marion I*, 559 F.3d at 698 (*quoting Bryan v. Duckworth*, 88 F.3d 431, 433 (7th Cir.1996), abrogated on other grounds, *Diaz v. Duckworth*, 143 F.3d 345, 346 (7th Cir. 1998)).[3] This evaluation depends on "'the actual conditions of confinement and not simply . . . a review of state regulations.'" *Marion II*, 641 F.3d at 875-876 *(quoting Marion I*, 559 F.3d at 699).

The defendants argue that they are entitled to summary judgment in their favor because Abdul-Wadood does not have a protected liberty interest in his indefinite placement in DWAS. Abdul-Wadood was required to reply with evidence to the contrary. *See Marion II,* 641 F.3d at 876-877. He has not done so.[4] There is no evidence upon which a reasonable trier of fact could conclude that Abdul-Wadood's conditions of confinement in DWAS are harsher than those in the normal prison environment. "When a plaintiff fails to produce evidence, the defendant is entitled to judgment; a defendant moving for summary judgment need not produce evidence of its own." *Id.* at 877 (citing *Celotex Corp.,* 477 U.S. 317 (1986)). Abdul-Wadood has failed to meet his burden of production and the defendants are entitled to summary judgment on this basis.

---

3 The Seventh Circuit has described an inmate's liberty interest in avoiding segregation as limited or even nonexistent, but these cases all involve relatively short periods of time. *Marion*, 559 F.3d at fn 2. (collecting cases); *see i.e.*, *Townsend v. Fuchs*, 522 F.3d 765, 766, 772 (7th Cir.2008) (holding that "inmates have no liberty interest in avoiding placement in discretionary segregation") (59 days); *Hoskins v. Lenear*, 395 F.3d 372, 374-75 (7th Cir. 2005) (holding that the punishments the plaintiff suffered because of his disciplinary conviction-demotion in status, segregation and transfer-raise no due process concerns) (60 days); *Holly v. Woolfolk*, 415 F.3d 678, 679 (7th Cir. 2005) (noting that "being placed in segregation is too trivial an incremental deprivation of a convicted prisoner's liberty to trigger the duty of due process") (2 days); *Lekas v. Briley*, 405 F.3d 602, 612 (7th Cir. 2005) (analyzing conditions of confinement, but also noting that prisoner's segregation "was still not so long as to work an atypical and significant hardship") (90 days); *Thomas v. Ramos*, 130 F.3d 754, 761 (7th Cir.1998) (holding that no liberty interest was implicated and noting "it was obviously a relatively short period when one considers his 12 year prison sentence") (approximately 70 days).

4 The complaint is insufficient to overcome summary judgment. The complaint was not signed under penalty of perjury and unsupported allegations are insufficient to overcome summary judgment. AThe nonmovant will successfully oppose summary judgment only when it presents definite, competent evidence to rebut the motion.@ *Vukadinovich v. Bd. of Sch. Trs.,* 278 F.3d 693, 699 (7th Cir. 2002) (internal quotation and citation omitted).

To the extent Abdul-Wadood alleges that his Eighth Amendment rights have been violated based on the conditions of his confinement, this claim fails for the same reasons. There is no evidence to conclude that the nature of Abdul-Wadood's prolonged confinement in DWAS constitutes cruel and unusual punishment. *See Walker v. Shansky*, 28 F.3d 666, 673 (7th Cir. 1994) (denying summary judgment on the issue of whether Walker's placement in administrative segregation violated the Eighth Amendment where Walker testified that he was denied water for up to a week, not permitted sufficient exercise time, and subjected to repeated physical abuse).

2. *Due Process*

The defendants argue that even if Abdul-Wadood had a liberty interest in his placement in DWAS or in a release date he has been provided all of the due process to which he is entitled. The record reflects that Abdul-Wadood was transferred from disciplinary segregation to administrative segregation as a result of his prior conduct. Abdul-Wadood specifically meets two of IDOC's criteria for placing prisoners on administrative segregation: he has a "[h]istory of assaultive behavior," and "[a] documented history of behavior that causes staff to believe that [his] continued presence in the offender general population would be detrimental to the security of the facility. . . ." See Dkt. No. 31-8. In fact, the Northern District previously considered Abdul-Wadood "precisely the type of offender who should be segregated" in his prior § 1983 action challenging his placement in administrative segregation. *Love v. Duckworth,* 554 F. Supp. 1067, 1071 (N.D. Ind. 1983). The Northern District continued: "Plaintiff not only is a threat to the welfare and safety of other offenders and of staff, he has a documented history showing that the threat is an actuality. The history of assaultive and other antisocial behavior in the three years in the Department of Correction is lengthy, culminating in the taking of hostages." *Id.* at 1071. Abdul-Wadood has added dozens of violations to his record since that case was decided. For

example, while serving time for his murder conviction, Abdul-Wadood was convicted of battery in Madison County in 1985, LaPorte County in 1988, and again in Madison County in 1989. Abdul-Wadood does not dispute that his disciplinary record with several violent encounters makes him a suitable candidate for administrative segregation.

Instead, Abdul-Wadood contends that he was denied a hearing prior to his transfer to DWAS and that his indefinite placement violates the constitution. There is no dispute that Abdul-Wadood was not provided a hearing prior to his transfer from disciplinary segregation to DWAS. But such a hearing was not required. In *Helms,* the Supreme Court stated that prison officials were "obligated to engage only in an informal, nonadversary review of the information supporting [the inmate's] administrative confinement, including whatever statement [the inmate] wished to submit, within a reasonable time after confining him to administrative segregation." *Helms*, 459 U.S. at 472. In addition,

> Prison officials must engage in some sort of periodic review of the confinement of such inmates [in administrative segregation]. This review will not necessarily require that prison officials permit the submission of any additional evidence or statements. The decision whether a prisoner remains a security risk will be based on facts relating to a particular prisoner-which will have been ascertained when determining to confine the inmate to administrative segregation-and on the officials' general knowledge of prison conditions and tensions, which are singularly unsuited for "proof" in any highly structured manner.

*Helms*, 459 U.S. at 477 fn.9. The Supreme Court reaffirmed this approach to procedural due process in the prison context in *Wilkinson*, 545 U.S. at 229 ("Although *Sandin* abrogated . . . *Hewitt's* methodology for establishing the liberty interest, these cases remain instructive for their discussion of the appropriate level of procedural safeguards.").

On March 31, 2008, Abdul-Wadood completed his time in disciplinary segregation. Around that time he was notified by prison mail that he had been placed on administrative

segregation without a release date. He was not given a hearing at that time.[5] The record reflects that Abdul-Wadood was referred for DWAS approximately 6 weeks later on May 19, 2008, based on his extensive conduct history. See Dkt. No. 31-2 at pgs. 2-3 (DWAS Referral); 5-6 (Classification Designation); Dkt. No. 31-3 (Disciplinary Reports); Dkt. No. 31-4 (parole records listing disciplinary actions). The May 19, 2008, report of classification hearing is also on record. Dkt. No. 31-2 at p.4. This record reflects that prison officials engaged in an informal review of the information supporting Abdul-Wadood's confinement in DWAS within a reasonable time after confining him to administrative segregation. It is not clear whether or at what point Abdul-Wadood was given the opportunity to make a statement regarding his classification. There is, however, a classification appeal process in place which Abdul-Wadood utilized at least once. *See* Dkt. No. 31-2 at p. 18. Through this appeal process Abdul-Wadood was able to submit a statement which was considered by prison officials in concluding that Abdul-Wadood's continued placement in administrative segregation was appropriate. *Id.*

In addition, Abdul-Wadood has received monthly reviews of his DWAS status both at Westville and Wabash Valley consistent with Indiana Code § 11-10-1-7.[6] Multiple classification hearings have been conducted (including annual reviews) while Abdul-Wadood has been confined in DWAS. The defendants repeatedly determined that Abdul-Wadood should remain in DWAS and that releasing Abdul-Wadood from DWAS would have a detrimental effect on the security of

---

[5] Abdul-Wadood argues that pursuant to Indiana Code § 11-10-1-3(d) he was entitled to a hearing prior to being placed on administrative segregation. But § 11-10-1-3 does not apply to Abdul-Wadood's situation. That provision describes the process by which an offender is originally assigned to an appropriate degree of security and the facility assignment. It does not describe the administrative segregation process.

[6] Indiana Code § 11-10-1-7 states that "[a]n offender may be involuntarily segregated from the general population of a facility or program if the department first finds that segregation is necessary for the offender's own physical safety or the physical safety of others . . . The department shall review an offender so segregated at least once every thirty (30) days to determine whether the reason for segregation still exists." Abdul-Wadood does not dispute that he has received the monthly review specified under § 11-10-1-7.

the facility. There is no evidence to suggest that the defendants failed to properly consider Abdul-Wadood's situation during their monthly and annual reviews. The record reflects that Abdul-Wadood was given the due process to which he was entitled and the defendants are entitled to judgment as a matter of law.

B.      **Denial of Grievances**

Abdul-Wadood argues that defendant Bean has returned his grievances with the purpose of impairing his ability to exhaust his administrative remedies in violation of the First Amendment's right to access the courts. The defendants respond that even if defendant Bean refused to process Abdul-Wadood's grievance, this conduct did not restrict Abdul-Wadood's ability to access the court, as evidenced by this lawsuit.

"[T]o state a right to access-to-courts claim . . . a prisoner must make specific allegations as to the prejudice suffered because of the defendants' alleged conduct." *Ortloff v. United States,* 335 F.3d 652, 656 (7th Cir. 2003). The defendants are correct that Abdul-Wadood has not shown that he suffered any injury as a result of Bean's alleged actions, nor could he. The Prison Litigation Reform Act requires that a prisoner exhaust his available administrative remedies before bringing a suit concerning prison conditions. 42 U.S.C. ' 1997e(a); *Porter v. Nussle,* 534 U.S. 516, 524-25 (2002). It has been recognized, however, that Aa remedy becomes 'unavailable' if prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting.@ *See Dole v. Chandler,* 438 F.3d 804, 809 (7th Cir. 2006). Given these circumstances, Abdul-Wadood has not been prejudiced by Bean's conduct. Further, the record reflects that the issue Abdul-Wadood sought to grieve--his indefinite placement on administrative segregation--is not covered by IDOC's administrative grievance process but is

instead addressed through the classification appeal process. There is no dispute that Abdul-Wadood exhausted his administrative remedies regarding the circumstances of his indefinite placement on DWAS through the classification appeal process.

Finally, the Seventh Circuit has "specifically denounc[ed] a Fourteenth Amendment substantive due-process right to an inmate grievance procedure." *Grieveson v. Anderson*, 538 F.3d 763, 772 (7th Cir. 2008). As explained in *Antonelli v. Sheahan,* 81 F.3d 1422, 1430-31 (7th Cir. 1996), "any right to a grievance procedure is a procedural right, not a substantive one. Accordingly, a state's inmate grievance procedures do not give rise to a liberty interest protected by the Due Process Clause." *Id.* at 1430-31(internal citations omitted). Because Abdul-Wadood had no expectation of a particular outcome of his grievances, there is no viable claim which can be vindicated through § 1983. *Juriss v. McGowan*, 957 F.2d 345, 349 n.1 (7th Cir. 1992) (without a predicate constitutional violation one cannot make out a *prima facie* case under § 1983).

For all of these reasons, defendant Bean is entitled to summary judgment on the First Amendment claim.

## C. Qualified Immunity

The defendants argue that they are entitled to qualified immunity. "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Because there was no constitutional violation the defendants do not require the additional protection of qualified immunity and this affirmative defense will not be discussed further. *See Mucha v. Vill. of Oak Brook*, 650 F.3d 1053, 1057–58 (7th Cir. 2011).

## Conclusion

For the reasons explained above the defendants' motion for summary judgment [Dkt. 31] is **granted.** Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date:  05/21/2013

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

Distribution:

LOKMAR Y. ABDUL-WADOOD
5268
WABASH VALLEY CORRECTIONAL FACILITY - Inmate Mail/Parcels
6908 S. Old US Hwy 41
P.O. Box 1111
CARLISLE, IN 47838

Corinne T.W. Gilchrist
OFFICE OF THE INDIANA ATTORNEY GENERAL
Email: corinne.gilchrist@atg.in.gov